Frank McGUIRE, Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellee.

No. 91–3238.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1991.

Decided Feb. 12, 1992.

David Roloff (argued and briefed), Paul P. Psota (briefed), Gaines & Stern, Cleveland, Ohio, for plaintiff-appellant.

Stephen Q. Giblin (argued and briefed), Kurt D. Weaver, Veronica M. Dougherty, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant-appellee.

Before RYAN and BOGGS, Circuit Judges, and GODBOLD, Senior Circuit Judge.[*]

PER CURIAM.

This is a Title VII case in which the employee charges religious discrimination.

General Motors terminated Frank McGuire, a practicing Seventh Day Adventist, because he would not work on Saturday, his Sabbath. He sued alleging that his discharge discriminated against him because of his religion in violation of 42 U.S.C. § 2000e. General Motors defended on the ground that it had made a reasonable accommodation for his religious practices and beliefs. On motion for summary judgment[1] the district court found GM had made reasonable accommodation and entered judgment in favor of GM. We reverse.

McGuire began employment with GM in 1965. Most recently he was a security officer. GM's security department operates three shifts per day seven days per week. Security officers work five days each week on a rotating basis, with the result that they are periodically scheduled to work on weekends.

McGuire became a practicing Seventh Day Adventist in August 1977. He observes the Sabbath from sundown Friday to sundown Saturday and refrains from secular labor during that time. For approximately six months after joining the church McGuire successfully avoided working on his Sabbath when so scheduled by taking one-day vacations and supplemental time-off days and by arranging voluntary shift-swaps with other security officers. He also pursued, without success, transfers within GM to departments that would not require him to work on his Sabbath.

McGuire's supervisor discovered his Sabbath observance practices in January 1978 and, according to McGuire, informed him that he could not take one-day vacations and supplemental time-off days to avoid work on the Sabbath. According to GM, McGuire then asked not to be scheduled to work on his Sabbath. GM honored his request until officials of the security officers' union and other security officers complained that McGuire was being afforded preferential treatment. As a result

---

[*] The Honorable John C. Godbold, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. Submitted on depositions of plaintiff and GM officers, numerous documents, and the transcript of a hearing before the Ohio Civil Rights Commission.

McGuire was returned to the regular work schedule in March 1978.

GM's security supervisor performed two surveys of the security officers during the last two weeks of March 1978. The surveys asked:

1. Officer Frank McGuire has joined the Seven[th] Day Adventist Religion. Their belief is that their worship day begins at sundown Friday evening to sundown Saturday evening and they will not labor during that time. Would you be willing to trade days off with Frank to accommodate his religious beliefs and convictions?

2. In order to accommodate Frank McGuires [sic] religious beliefs and we scheduled him to work 1st shift and gave him Saturdays and some other day of the week off, would you go along with this?

All but two security officers responded negatively to the surveys. Some officers replied that they should get the same favorable treatment as McGuire.

During March 1978, McGuire failed to report to work on several occasions. GM warned him that further unexcused absences would lead to his discharge. McGuire took 30 days' disability leave that spring in response to stress caused by the Sabbath conflict. GM discharged McGuire in June 1978 for allegedly abusing sick leave, but reinstated him in January 1979 after a grievance proceeding.

GM continued to schedule McGuire to work on Saturdays and instructed him not to take vacation days or supplemental time-off days when work conflicted with his Sabbath. GM continued to permit McGuire to engage in voluntary shift-swapping, but he again failed to report to work when scheduled on his Sabbath. GM discharged him in April 1979.

McGuire filed charges of religious discrimination with the Ohio Civil Rights Commission [OCRC] and the Equal Employment Opportunity Commission. A formal hearing regarding his charges was held before an OCRC hearing examiner. OCRC concluded that GM had reasonably accommodated his religious beliefs. EEOC issued a Right-To-Sue Letter to McGuire.

McGuire then sued. The case was assigned to a magistrate judge with the consent of the parties. GM moved for summary judgment on the ground that there was no genuine issue of material fact concerning its accommodation of McGuire's religious practices. GM did not contend that McGuire had not made out a prima facie case but instead directly addressed the employer's burden of reasonable accommodation. The magistrate judge held that the finding of the OCRC had no preclusive effect on determination by the court. The magistrate judge determined that as a matter of law GM had reasonably accommodated McGuire's religious practices and granted summary judgment for GM.

■ In reviewing the district court's grant of GM's motion for summary judgment, this court applies a *de novo* standard, construing the record in the light most favorable to McGuire to determine whether there are any genuine issues of material fact. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990) (citing *Pinney Dock and Transp. Corp. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988)).

■ Title VII requires that an employer offer a reasonable accommodation of an employee's religious practices and beliefs or demonstrate that it could not reasonably accommodate the employee without incurring undue hardship. 42 U.S.C. § 2000e(j). Once an employee offers a single reasonable accommodation it has fulfilled its Title VII obligation. *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 68–69, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986).

The reasonableness of an accommodation must be determined on a case-by-case examination of the facts. *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), *cert. denied*, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988).

The district court described McGuire's contention in this way:

In arguing that in this case the opportunity to arrange shift swaps did not constitute reasonable accommodation the plaintiff asserts that "While it is not disputed that Mr. McGuire was permitted to swap shifts so that he could observe his Sabbath, the facts demonstrate that as time wore on, Mr. McGuire found it virtually impossible to arrange a swap."

It then framed the question of law as follows:

> The question of law thus presented is whether a [sic] employee may satisfy the duty of reasonable accommodation by permitting an employee to engage in trading shifts, regardless of the willingness of other employees to make such a trade. If the answer to that question is yes, then the defendant is entitled to judgment in its favor at this time. If the answer is no, then at the least there would exist a genuine issue of material fact—the willingness/unwillingness of other workers to swap and the extent to which the plaintiff pursued such option— which would be preclusive of entry of summary judgment.

The court answered its question "Yes."

> [A]n employer offers a reasonable accommodation by allowing an employee the opportunity to arrange shift swaps, and ... the unwillingness of other available employees to cooperate in such regard does not negate such reasonable accommodation.

The court found the following with respect to the survey results. Only one security officer indicated that he would trade shifts with McGuire. Another expressed indifference to the matter of whether plaintiff was scheduled on Saturdays. Other officers responded that they believed it to be unfair that McGuire should be given preferential treatment in having his Sabbath off every week. Some answers indicated fear by co-workers that once they traded shifts with McGuire they might be obligated from that point on to work the Saturday shift.

■ We hold that this case could not be decided on summary judgment. The shift-swap scheme had been operating with at least some degree of success until the surveys were taken. McGuire contends that the surveys created a new situation, or significantly altered the previous arrangement, with the result that it became "virtually impossible" for him to find volunteers with whom to swap. This gives rise to several questions which the court did not address, including at least these: (1) Were the surveys invidiously intended to inhibit volunteers from swapping shifts? (2) Although not so intended, did the fact of the surveys being made, or the language of the questions, have the effect of frustrating or inhibiting shift-swapping? (3) And, if the surveys were neutral but in fact frustrated or impeded the swapping process, was this neutral employer action such a change as to make the previously reasonable accommodation unreasonable and a violation of § 2000e? Tied in with these inquiries, which address the reasonableness of the accommodation, is a fourth one—whether the lack of volunteers after March 1979 was in fact caused by McGuire's failure to seek volunteers rather than by the performance of the surveys? *See Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 145 (5th Cir.1982); *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286–87 (8th Cir. 1977), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 778, 54 L.Ed.2d 788 (1978).

REVERSED.