*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  09a0215a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

JEFFREY J. REED,

*Plaintiff-Appellant,*

*v.*

No. 07-2505

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-14233—Sean F. Cox, District Judge.

Argued:  September 17, 2008

Decided and Filed:  June 23, 2009

Before:  GUY, BATCHELDER, and McKEAGUE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:**  Bruce N. Cameron, NATIONAL RIGHT TO WORK LEGAL DEFENSE
FOUNDATION, Springfield, Virginia, for Appellant.  Barry Macey, MACEY, MACEY &
SWANSON, Indianapolis, Indiana, for Appellee.  **ON BRIEF:**  Bruce N. Cameron, Glenn
M. Taubman, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION,
Springfield, Virginia, for Appellant.  Barry Macey, MACEY, MACEY & SWANSON,
Indianapolis, Indiana, for Appellee.

BATCHELDER, J., delivered the opinion of the court.  GUY, J. (pp. 10-11),
delivered a separate concurring opinion.  McKEAGUE, J. (pp. 12-21), delivered a separate
dissenting opinion.

1

———————————————

**AMENDED OPINION**

———————————————

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Jeffrey Reed appeals the district court's order granting summary judgment in favor of Defendant-Appellee International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). Reed claims that UAW, in violation of Title VII of the Civil Rights Act of 1964, failed to provide a reasonable accommodation for his religious objection to financially supporting the union. Because Reed has failed to make out a prima facie religious accommodation case, we **AFFIRM**.

## I.  BACKGROUND

UAW represents the employees of automobile manufacturer AM General in Mishawaka, Indiana. The collective bargaining agreement between UAW and AM General includes a union security provision under which all AM General employees must either become UAW members or pay the union an agency fee equal to the amount of membership dues. The UAW Constitution grants both members and non-member agency fee payers "the right to object to the expenditure of a portion of his/her dues money for activities or causes primarily political in nature" and to receive a rebate for that portion. UAW and AM General also are parties to a letter agreement that allows any employee with a *bona fide* religious objection to joining or supporting a labor union to satisfy his union security obligation by making a payment equal to full membership dues to one of three charities mutually designated by UAW and AM General.

On May 20, 2002, AM General hired Reed to work at its Mishawaka facility, and Reed immediately became a UAW member. After reading UAW publications, Reed concluded that he could not financially support the union without violating his personal religious convictions. Reed terminated his UAW membership on October 18, 2004. UAW notified Reed that it would treat him as an objecting non-member and directed AM General to deduct from Reed's pay an agency fee consisting only of that portion of the union dues not used for political expenditures.

On February 10, 2005, Reed informed UAW that he had religious objections to supporting the union in any amount and asked to donate to Disabled American Veterans the reduced agency fee he had been paying UAW as an objecting non-member. On November 10, 2005, after receiving confirmation from Reed's pastor that Reed held *bona fide*, personal convictions against supporting the union, UAW granted Reed's request to be treated as a religious objector. UAW instructed Reed to pay $439.44, the amount of full union dues that had accrued since February 1, 2005,[1] to one of the three charities selected by UAW and AM General. UAW further explained that upon Reed's delivering to UAW a receipt showing full payment to an approved charity, the union would refund him $339.62, the amount he had paid in agency fees from February 2005 through November 2005. Reed paid $439.44 to Riley's Children Foundation, one of the designated charities, and UAW refunded him $339.62. This arrangement caused Reed to pay approximately $100 more to charity as a religious objector than he had paid to UAW in agency fees as an objecting non-member. Reed's ongoing union security obligation requires him to make a monthly charity payment approximately 22% greater than what he would pay UAW as an objecting member or non-member.

Reed filed this action on September 26, 2006, alleging that UAW failed reasonably to accommodate his religious objections to supporting the union. On October 19, 2007, the district court ruled on the parties' cross-motions for summary judgment and held that: (1) Reed had failed to establish his prima facie case because he had not shown that he had been discharged or disciplined; and (2) even if Reed had established a prima facie case, UAW's accommodation of Reed's religious objections was reasonable. Reed timely appealed that decision to this court.

## II.  STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment, using the same standard applied by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper "if the pleadings, the discovery and

---

[1] Although Reed's notice of his religious objection was dated February 10, 2005, UAW announced that it would consider his religious-objector status as beginning on February 1, 2005.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). That is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Id.* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

## III. ANALYSIS

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for a labor organization . . . to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his . . . religion . . . ." 42 U.S.C. § 2000e-2(c). There are two basic types of religious discrimination claims that an individual may bring against a labor union under Title VII: disparate treatment claims and religious accommodation claims. In raising a disparate treatment claim, a plaintiff alleges that the union has treated him less favorably than similarly-situated applicants or members because of his religion. Here, Reed has not brought a disparate treatment claim. In fact, he has in his briefs before this court taken pains to emphasize that he has taken only the "accommodation path," a theory of recovery under which Reed asserts that the union has failed reasonably to accommodate a conflict between an employment requirement and his religious beliefs.

Title VII provides for religious accommodation claims in its definition of religion, which includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). This definition imposes upon employers a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship[.]" *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977). Although the definition mentions only employers, "courts have held that the duty to accommodate an employee's religious beliefs extends to unions as well as employers." *Wilson v. NLRB*, 920 F.2d 1282, 1286 (6th Cir. 1990); *see also EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 n.7 (1st Cir. 2002) ("[C]ourts have uniformly imposed upon labor organizations the same duty to provide reasonable accommodations.").

In this circuit, it is settled that "[t]he analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (quoting *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). "To establish a prima facie case, [a plaintiff] must show that '(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement.'" *Id.* "Once an employee has established a prima facie case, [the defendant] has the burden 'to show that it could not reasonably accommodate the employee without undue hardship.'" *Id.* (quoting *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002)).

Reed's prima facie case failed, the district court held, because he had not presented sufficient evidence from which a jury could find that he had been discharged or disciplined. Reed contends that the district court was "confused about the elements of proof." The only disputed issue in the case, Reed argues, is whether he has been

reasonably accommodated — not whether he should have been accommodated. Reed thus insists that he is not required to prove the elements of a prima facie religious discrimination case.

We have declined to relieve a religious accommodation plaintiff of his burden to establish a prima facie case, including the requirement that he demonstrate that he has been discharged or disciplined. *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 637 (6th Cir. 2003). Reed cannot avoid this requirement by insisting that the only controversy here concerns the reasonableness — not the necessity — of his accommodation. Unless a plaintiff has suffered some independent harm caused by a conflict between his employment obligation and his religion, a defendant has no duty to make any kind of accommodation. *See id.* Even Reed admits that "absent an accommodation requirement, he could not claim that he had a right to pay his union fees to charity." And although an employer or union may not dole out accommodations in a discriminatory fashion, *see Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 71 (1986), Reed explicitly has disavowed any disparate treatment claim.

Reed alternatively argues that he may satisfy the "discharge or discipline" element of the prima facie case by showing any adverse employment action. Otherwise, Reed contends, a religious accommodation plaintiff could never establish a prima facie case against a labor union defendant, because a labor union cannot by itself discharge or discipline an employee. Reed contends that the amount he must pay to charity in excess of the amount other objectors pay to UAW "is effectively a reduction in his pay" and constitutes an adverse action.

True, the prima facie elements of a religious accommodation case do not always fit nicely into a case against a labor union. Just as a union cannot unilaterally discharge or discipline an employee, it cannot by itself impose an employment obligation.[2] We need not attempt here to specify the precise contours of a prima facie case against a labor union, however. Nor do we have to determine the broader question of whether

---

[2]Reed's lawsuit is against UAW only, although the charity payment requirement to which Reed objects is imposed under the terms of a letter agreement signed by both UAW and AM General.

"discharge or discipline" should be understood to include any adverse employment action. The dissent contends that "[t]his case is the first in our circuit to squarely present the question of whether a plaintiff can satisfy the prima facie case for a religious accommodation claim by showing an adverse employment action without showing discharge or discipline." Dissenting Op. at 15. But because we hold that the specific accommodation Reed challenges here does not rise to the level of an adverse employment action, we are not presented with the issue of whether a plaintiff can proceed on a showing of an employment action that is "adverse" but is not a form of "discharge or discipline." Other than the accommodation itself, the reasonableness of which he challenges, Reed cannot point to any action by UAW that has adversely affected his employment. And whatever "discharge or discipline" or "adverse employment action" may mean in other contexts, a plaintiff does not carry his burden merely by showing that he has lost some amount of pay as a result of a proffered accommodation. *Tepper*, 505 F.3d at 514. Even under the standard the dissent proposes, the incremental adjustment to Reed's pay as a result of his charity-substitution payment is not actionable: It is not a *materially* adverse change in the terms or conditions of his employment. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).

In *Tepper*, we rejected a similar attempt to establish an identity between the challenged accommodation and the alleged injury. There, the plaintiff was a Messianic Jew who observed each Saturday as his Sabbath. *Id.* at 511. Although the post office for which Tepper worked followed a rotating schedule that allowed employees to take turns having Saturdays off, initially the staffing levels were sufficiently high for management to accommodate Tepper by giving him every Saturday off. *Id.* at 511-12. After staffing levels were reduced, this arrangement became difficult to sustain, and Tepper's supervisor informed him that his accommodation was being withdrawn. *Id.* at 512. The supervisor advised Tepper to reserve vacation time for Saturday absences, to use annual leave and unpaid leave, and to exchange days off with other employees. *Id.* at 512-13. Tepper argued that this alternative arrangement constituted a form of discipline because it forced him to take unpaid leave, reducing his annual pay and his

pension.  *Id.* at 513.  We held, however, that "more than loss of pay is required to demonstrate discipline or discharge."  *Id.* at 514.

Just as the plaintiff in *Tepper* could not point to any "discipline" other than the accommodation he claimed was unreasonable, Reed has suffered no discipline or adverse employment action other than the accommodation he claims is unreasonable — his required charity-substitution payment.  The dissent contends that our reliance on *Tepper* is misplaced because in that case the employee was offered the option of taking unpaid leave so he could observe his Sabbath.  Tepper's loss was different from Reed's, the dissent insists, because Tepper simply was not being paid for days he did not work.  Dissenting Op. at 17.  Even so, Tepper's accommodation required him to choose between violating his Sabbath by working his scheduled Saturdays, and observing his Sabbath but having limited opportunities to make up the lost hours and pay.  Here, Reed's accommodation required him to choose between violating his religious beliefs by paying the agency fee — albeit the reduced agency fee — to the union, and honoring his religious beliefs by paying nothing to the union, but paying more out of pocket in order to satisfy his union security obligation.  So in both *Tepper* and this case, the employee faced a choice of suffering either a monetary loss or a religious loss.  Also of note, each plaintiff received a corresponding benefit unavailable to other employees: Tepper got every Saturday off, and Reed pays the union nothing while enjoying the benefits negotiated through collective bargaining.

The dissent contends that unless we are willing to treat a challenged accommodation as an adverse action, an employee can never prevail on a religious accommodation claim unless he is first discharged or disciplined:  "If the employee accepts the accommodation, then, under the lead opinion's view, the employee has acquiesced in the discrimination and abandoned any hope of a remedy."  Dissenting Op. at 18.  But an employee who believes that he is being treated less favorably because of his religion or some other protected ground has the right to bring a disparate treatment claim — a claim that Reed explicitly has disavowed.

## IV.  CONCLUSION

Because Reed has not shown any material adverse employment action, much less discharge or discipline, his religious accommodation claim fails.  We therefore **AFFIRM** the district court's granting summary judgment in favor of UAW.

---

**CONCURRENCE**

---

RALPH B. GUY, JR., Circuit Judge, concurring.  I write separately to clarify my reasons for affirming the decision granting summary judgment to the UAW with respect to Reed's Title VII religious accommodation claim.  Although Reed has not made out a *prima facie* case, I agree with the district court that, even if he had, the UAW's accommodation requiring substitute payment of the full amount of dues to a charity constituted a reasonable and nondiscriminatory accommodation of Reed's religious beliefs.

Title VII's definition of "religion" makes it an unlawful employment practice not to make reasonable accommodation for the religious practices of employees unless it would cause undue hardship.  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).  An employee is entitled only to a reasonable accommodation, and, if reasonable, the defendant need not show that the employee's preferred accommodation would result in undue hardship.  *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67-68 (1986).  The duty to accommodate an employee's religious beliefs extends to unions as well as employers.  *Wilson v. NLRB*, 920 F.2d 1282, 1286 (6th Cir. 1990).  Although several circuits have held that a union reasonably accommodates religious objectors by permitting the substitution of charitable contributions for union dues, no circuit has squarely addressed the reasonableness of requiring that the substituted charitable contributions be equal to the full *amount* of the dues.  *See Wilson*, 920 F.2d at 1286; *Nottelson v. Smith Steel Workers D.A.L.U. 19806*, 643 F.2d 445, 451 (7th Cir. 1981); *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1242 (9th Cir. 1981).

In addressing the question of reasonableness, the Court in *Ansonia* focused on whether the accommodation eliminated the conflict between the employment requirement and the employee's religious beliefs.  479 U.S. at 70.  There, the specific accommodation—allowing the plaintiff to take unpaid leave to avoid working on Saturdays—eliminated the conflict between the employment requirement and religious

practices and required him only to give up compensation for a day that he did not in fact work. *Id*. at 70-71. In this case, Reed concedes that allowing him to make substituted charitable contributions, even in the full amount of the dues, eliminated the conflict between the union security clause and his religious beliefs. Reed actually argues that the accommodation was not reasonable because it was discriminatory, relying on the caveat in *Ansonia* that "unpaid leave is not a reasonable accommodation when paid leave is provided for all purposes *except* religious ones." *Id*. at 71.

Reed insists that the relevant comparison is not with nonobjectors who pay the full amount of the dues, but with nonmember objectors (*Beck* objectors) who pay only that portion of dues expended on "core" representational activities (*i.e.*, 78.29% of the full dues). *See Communications Workers v. Beck*, 487 U.S. 735 (1988). In arguing that the difference is religious discrimination, Reed characterizes the comparison as being between "secular" and "religious" objectors. This is both misleading and inaccurate—as plaintiff's own situation demonstrates—since an employee may elect nonmember *Beck* status because the union's political activities conflict with his religious beliefs. The difference is based not on the employee's reasons for objecting, but rather on the nature of the respective objection, and different objections call for different accommodations. *See*, *e.g.*, *EEOC v. Univ. of Detroit*, 904 F.2d 331, 335 (6th Cir. 1990). Nor is Reed persuasive in arguing that only religious objectors are *compelled* to pay an amount equal to the full dues because any nonobjecting member can choose to leave the union and assert *Beck* objector status. That is to say nothing more than that an employee cannot be compelled *if* he is a *Beck* objector. Since the accommodation provided plaintiff in this case was reasonable, the district court did not err in granting summary judgment to the UAW with respect to Reed's religious accommodation claim.

———————

**DISSENT**

———————

McKEAGUE, Circuit Judge, dissenting.  The majority opinion affirms based on Reed's failure to demonstrate either discharge or discipline as part of his prima facie case against his union–a union, it is worth noting, that does not have the power to discharge or to discipline.  I do not think either Title VII or our past holdings requires such a showing.  An adverse employment action should be all that is required to establish a prima facie case for a religious accommodation claim, and certainly no more than that should be required in a claim against a union.  The UAW required Reed to pay more dues because of the religious nature of his objection to the union, and this increased payment was an adverse employment action.  I would therefore hold that the increased payment was sufficient to establish the final element of Reed's prima facie case.

I also disagree with the concurring opinion's analysis of the reasonableness of the accommodation.  Because I do not agree with either ground offered for affirming the district court's judgment, I respectfully dissent.

**I.**

Religious accommodation claims against employers arise under the same statutory provisions as other Title VII religions discrimination claims.  Title VII makes it an unlawful employment practice to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  Religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).  "The intent and effect of this definition was to make it an unlawful employment practice under § 703(a)(1) [42 U.S.C. § 2000e-

2(a)(1)] for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *TWA v. Hardison*, 432 U.S. 63, 74 (1977). Section 2000e-2(a)(1) also provides the basis for religious disparate treatment claims. *See Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

Despite the single statutory source for Title VII religious discrimination claims, our past decisions have incorrectly suggested a different level of harm is required to establish a prima facie disparate treatment claim based on religion than is required to establish a prima facie religious accommodation claim. A disparate treatment claim requires the employee show, among other things, "that he experienced an adverse employment action." *Tepper*, 505 F.3d at 515. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998). A religious accommodation claim, meanwhile, appears to require a plaintiff to make a higher showing that "he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987).

This distinction between the amount of harm required under a disparate treatment theory and under a religious accommodation theory is not required by the statute. *See* 42 U.S.C. § 2000e-2(a)(1). It is also not required by our past holdings, though it is true that our religious accommodation precedents do use the "discharge or discipline" language. That is not surprising, because those decisions invoking the third element of the religious accommodation prima facie case almost invariably involve discharged employees. *See Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 515 (6th Cir. 2002) (discharged employee); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 623 (6th Cir. 2000) (discharged employee); *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994) (discharged employee); *McGuire v. Gen. Motors Corp.*, 956 F.2d 607, 609 (6th Cir. 1992); *Smith*, 827 F.2d at 1084 (discharged employee). These

cases therefore did not need to address whether a claim could survive without showing that the plaintiff had been discharged.

Our two most recent religious accommodation cases illustrate only that the prima facie case cannot be satisfied without showing some adverse employment action. In *Tepper*, we found that the plaintiff had failed to establish the prima facie case because the only action taken against him was that his employer required Tepper to use unpaid leave for his observance of the Sabbath. 505 F.3d at 514. We noted that this not only failed to establish the prima facie case for religious accommodation, it failed to establish any adverse action at all. *See id.* at 516. Similarly, in *Goldmeier v. Allstate Ins. Co.*, the plaintiffs quit their jobs before experiencing any adverse effect from their employer's failure to accommodate their religious beliefs. 337 F.3d 629, 633 (6th Cir. 2003). *Tepper* and *Goldmeier* therefore both involve plaintiffs that have not shown any adverse action, much less either discharge or discipline. They do not address whether a claim could succeed upon a showing of an adverse employment action other than discharge or discipline.

Other circuits have stated that an adverse employment action short of discharge or discipline is sufficient to establish the prima facie case for religious accommodation. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004); *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002); *EEOC v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996); *see also Bowles v. New York City Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008); *Ali v. Alamo Rent-A-Car, Inc.*, 8 F. App'x 156, 158-59 (4th Cir. 2001). Indeed, I can find no decision in any circuit in which an appellate court found a plaintiff failed to establish a prima facie case where the plaintiff had demonstrated a materially adverse employment action.

Moreover, our precedents allude to the sufficiency of an adverse employment action in religious accommodation claims. In *Goldmeier*, we rejected the appellants' argument that they need not show any harm in order to satisfy the prima facie case: "neither this court, nor any of its sister circuits with substantively parallel religious

discrimination jurisprudence, has ever endorsed the Goldmeiers' conclusion that no adverse employment action need be shown to sustain a prima facie case." 337 F.3d at 637. In *Tepper*, this court equated the "discharge or discipline" element of the religious accommodation prima facie case with the "materially adverse employment action" requirement of a disparate treatment claim. 505 F.3d at 516.

This case is the first in our circuit to squarely present the question of whether a plaintiff can satisfy the prima facie case for a religious accommodation claim by showing an adverse employment action without showing discharge or discipline. I would hold that a plaintiff should be able to succeed on such a showing. While discharge or discipline (assuming it is sufficiently severe) will always constitute a materially adverse employment action, there is no legal or logical reason why a plaintiff who suffers a materially adverse employment action must also show discharge or discipline.

## II.

Further, even assuming that our precedents compel this court to require a showing of discharge or discipline in a religious accommodation suit against an employer, there is no reason to extend that requirement to claims brought against unions. As the majority opinion acknowledges, "the prima facie elements of a religious accommodation case do not always fit nicely into a case against a labor union." There is a reason they do not fit nicely: the artificially high standard that we have previously suggested for a prima facie case against an employer simply can never be met in a claim against a union. As a union can neither discharge nor discipline an employee, applying the "discharge or discipline" element in claims against unions would foreclose all such claims. The majority opinion attempts to avoid this result by simply noting that there is no adverse employment action in this case. As I discuss below, I think it is clear that Reed did suffer an adverse employment action. Even putting that to the side, however, I cannot see how we can avoid entirely the question of what level of harm a plaintiff must show in a claim against a union. We cannot hold that Reed failed to meet the prima facie case without any indication of what that prima facie case is.

Indeed, Title VII itself suggests there may be a difference between claims against employers and claims against unions. A religious accommodation claim against employers is rooted in 42 U.S.C. § 2000e-2(a)(1). *See Hardison*, 432 U.S. at 73. The Supreme Court has held that the language of that section–"'hire,' 'discharge,' 'compensation, terms, conditions, or privileges of employment,' 'employment opportunities,' and 'status as an employee'–explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). The same language does not exist in Title VII's union provision. Instead, it is an unlawful practice for a union to "exclude or . . . expel from its membership, or otherwise to discriminate against, any individual because of his . . . religion," *id.* § 2000e-2(c)(1), or to "cause or attempt to cause an employer to discriminate against an individual in violation of this section." *Id.* § 2000e-2(c)(3). Notably, the phrase "otherwise discriminate against" is similar to that in Title VII's retaliation provision, which the Supreme Court has held is more expansive than the language in the provision giving rise to disparate treatment claims. *See Burlington*, 548 U.S. at 63-64.

Thus, even if this case does not provide an opportunity to clarify exactly what standard should apply in religious accommodation claims against unions (which I submit it does), the difference in statutory language should at least give us pause before we extend the "discharge or discipline" requirement to claims against unions. Add this difference in statutory language to the practical reality that a "discharge or discipline" requirement would essentially bar religious accommodation claims against unions, and it is clear that we should not impose the "discharge or discipline" requirement in this context.

## III.

As discussed above, I believe that a materially adverse employment action is the appropriate standard for all religious accommodation claims. Reed satisfied that standard. The UAW required Reed to make larger payments than secular objectors. This disparity constitutes an adverse employment action. Under Title VII, an

employment action must amount to "a materially adverse change" in the terms or conditions of employment to be actionable. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996); *see also Mitchell v. Vanderbilt Univ.,* 389 F.3d 177, 182 (6th Cir. 2004). Notably, the Supreme Court stated that such an action will "in most cases inflict[] direct economic harm." *Ellerth*, 524 U.S. at 762. The economic effect does not have to be large in order to be an adverse employment action. *See White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 794, 802 (6th Cir. 2004) (en banc). A differential in pay establishes an adverse employment action. *Fuhr v. School Dist. of City of Hazel Park*, 364 F.3d 753, 758 (6th Cir. 2004).

The UAW required that Reed donate the full amount of union dues to charity rather than the lower amount political objectors must pay the union. If Reed had a secular objection to the union, the amount Reed would have to pay would decrease. This is a direct economic effect that resulted in Reed receiving less net income. As such, the ongoing higher payment the union requires of religious objectors constitutes an adverse employment action.

**IV.**

The majority opinion seeks to minimize the significance of this economic burden by relying on *Tepper.* Yet *Tepper* presented a significantly different set of facts. In *Tepper*, the plaintiff sought days off to observe religious holidays. 505 F.3d at 512. His employer originally accommodated him, but later rescinded the accommodation. *Id.* His employer continued to permit the plaintiff to use unpaid leave for all of his holidays. *Id.* The plaintiff alleged that using unpaid leave decreased his pay. *Id.* We dismissed this argument, noting that "[t]he Supreme Court has stated that 'the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status.'" *Id.* at 514. We then concluded that "Tepper is simply not being paid for the time he does not work." *Id.* The same cannot be said for Reed.

Nor am I persuaded that the fact the adverse employment action in this case occurs as part of an accommodation should alter the analysis of the prima facie case.

There is no indication in our case law that the prima facie case is limited in this way. In *Tepper*, for example, we found that the prima facie case was not satisfied because the accommodation did not harm the plaintiff–not because the harm to the plaintiff was part of an accommodation. *See* 505 F.3d at 514.

Moreover, the majority opinion's arbitrary distinction between employer/union practices that "count" for the prima facie religious accommodation case and those that do not places religious employees in an unavoidable bind. If an employer or union offers the employee an accommodation that adversely affects the terms and conditions of his or her employment, the employee can do nothing but lose. If the employee accepts the accommodation, then, under the majority opinion's view, the employee has acquiesced in the discrimination and abandoned any hope of a remedy. Meanwhile, if an employee rejects the accommodation, the employee not only puts his or her employment in jeopardy, the employee also runs afoul of the Supreme Court's instruction that the employer, not the employee, chooses the accommodation. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67-69 (1986). The majority opinion does not–and I think cannot–explain what an employee placed in this position should do in order to appropriately assert his or her rights under Title VII.

**V.**

I also find the concurring opinion unpersuasive in its analysis of the reasonableness of the accommodation at issue here. Unlike the concurring opinion, I do not think it is enough to say that Reed's objection is different from other accommodated objectors. Though this is undoubtedly true, it does not explain why the accommodation is reasonable.

While the union does not have to use the accommodation proffered by the employee, the union must offer a *reasonable* accommodation. *See E.E.O.C. v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990). I would find the accommodation here unreasonable for two reasons: the union cannot require a payment of this size from a nonmember, and the accommodation is discriminatory.

The Supreme Court has held that unions may exact from objecting nonmembers "only those fees and dues necessary to performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues." *Commc'n Workers of Am. v. Beck*, 487 U.S. 735, 762-63 (1988) (internal quotation marks and citation omitted). Based on this, the Sixth Circuit has observed that *Beck* "limit[ed] the amount of dues a union can charge a non-union member." *United Food and Commercial Workers Local 951 v. Mulder*, 31 F.3d 365, 367 (6th Cir. 1994). If a union cannot charge an objecting nonmember more than the *Beck* amount, it seems to me that there is no basis for offering an accommodation in excess of that amount. As Reed is an objecting nonmember, it seems to me that a reasonable accommodation should be based on the amount that the union can require from objecting nonmembers under *Beck*.[1]

In this regard, I find persuasive the district court opinion in *O'Brien v. City of Springfield*. Relying on a state statute and a state regulation that provided a rule similar to the rule established in *Beck*,[2] a Massachusetts district court held that requiring a donation equal to full union dues was "a *per se* unreasonable accommodation." 319 F. Supp. 2d 90, 107 (D. Mass. 2003). It further explained that a union "is not entitled to charge whatever amount it wishes to someone making a charitable substitution." *Id.* at 106. The same reasoning should apply under *Beck*. The union should not be able to require objecting nonmembers to pay any more than *Beck* permits.[3] As Reed is an

---

[1] Although Reed did not articulate the argument in quite this fashion, he did raise a functionally identical argument in his briefs. Rather than phrasing the argument in terms of the amount the union can require him to pay, he argued that *Beck* gave objectors the right to choose not to pay the portion of union dues used for political purposes.

[2] The union notes that, unlike under *Beck*, the Massachusetts law does not permit unions to charge any nonmembers more than the agency service fee. *See* Mass. Gen. Laws ch. 150E, § 12; Mass. Regs. Code tit. 456, § 17.04. For the reasons given below in footnote 3, I do not think this distinction alters the analysis of the reasonableness of the accommodation in this case.

[3] The union argues that, because nonmembers who do not object can be required to pay the full amount, the relevant benchmark should be the full dues amount. However, there is absolutely no dispute here that Reed has made his objections known to the union. Therefore, the relevant amount should be the *Beck* amount, not the full dues amount. So long as an objector makes his or her objection known, the union *cannot* charge the full dues amount under *Beck*. *See Beck*, 487 U.S. at 762-63; *Int'l Assoc. of Machinists v. Street*, 367 U.S. 740, 774 (1961). What the union can charge other employees should therefore be irrelevant in determining the accommodation for Reed. Rather, the relevant standard should be based on the status of the employee in question. It would likewise be fruitless for an employer to argue

objecting nonmember, I would find that the union's attempt to force Reed to donate the full union dues amount rather than the amount paid by *Beck* objectors is unreasonable.

Further, the accommodation is discriminatory. The union admits that it prefers the elevated amount because "this arrangement does not create any financial incentive for employees to claim religious objection in order to reduce their financial obligations." Response Br. at 32. The value of the higher amount is precisely its deterrence of other members and nonmembers from asserting their religious objections. The union offers no other reason for requiring the elevated payments, and I cannot think of a non-discriminatory reason for requiring religious objectors such as Reed to pay more in order to accommodate their objections. I would therefore find the amount the union requires Reed to pay is discriminatory. As such, the accommodation should also be deemed unreasonable under *Ansonia Board of Education v. Philbrook*. *See* 479 U.S. 60, 71 (1986) ("Such an arrangement would display a discrimination against religious practices that is the antithesis of reasonableness.").

## VI.

There is no question that the only way Reed could avoid the conflict between his religious beliefs and the UAW's requirements was through a payment greater than that required of other objectors. I would find this sufficient to establish the third prong of the prima facie case for religious accommodation. I also would find the accommodation offered by the union unreasonable because the union lacks the authority to require such a large payment and the accommodation discriminates against religious objectors. Accordingly, I respectfully dissent.

---

that, when reviewing the termination of a for-cause employee, the court should consider that an employer can fire an at-will employee for any reason. Instead, what matters is the for-cause status of the employee in question. Similarly, the union should not point to the dues it can require other employees to pay; what matters is the amount it could otherwise require Reed to pay.