OPINION
DONALD, Circuit Judge.
Plaintiff Kimberly Crider appeals the district court’s grant of Defendant University of Tennessee, Knoxville’s (“UTK”) motion for summary judgment in Crider’s religious discrimination suit brought pursuant to Title VII of the Civil Rights Act of 1964. For the following reasons, we reverse and remand.
I.
In May 2008, Crider was hired by UTK as a Programs Abroad Coordinator in the University’s Programs Abroad Office (“PAO”). Crider’s job responsibilities included attending conferences on behalf of the department, traveling internationally on “site visits,” and monitoring an emergency cell phone on a rotating basis, including weekends.
The emergency phone was activated in April 2008 as a means by which students studying abroad could reach the PAO in the event of an emergency. Because a student’s file might need to be accessed on such an occasion, the Coordinator with monitoring duties was required to stay in Knoxville at all times while in possession of the emergency phone. During the time Crider was employed by UTK, the PAO had three Coordinators. The Coordinators shared responsibility for carrying the emergency cell phone on a rotating basis. This responsibility included off-hours and weekends.
Four days after she began working for UTK, Crider informed Dr. Pia Wood, her supervisor, that she was a Seventh Day Adventist and that due to her religious beliefs she was not able to perform work related tasks from sundown on Fridays until sundown on Saturdays. Among the tasks that Crider was unable to perform was monitoring the emergency cell phone on Friday nights and Saturdays. Dr. Wood referred Crider to Dr. Marva Rudolph, Director of UTK’s Office of Equity and Diversity. On May 20, 2008, Dr. Rudolph instructed Crider to put her request for a religious accommodation in writing, which she did. Dr. Rudolph then contacted Dr. Wood and Alan Chesney, UTK’s Human Resources Director, stating that she did not think UTK was obligated to accommodate Crider but that they would explore possible accommodations as a proactive matter.
Despite her conversations with Drs. Wood and Rudolph, in June 2008 Crider learned that she was scheduled to carry the emergency phone on an upcoming Saturday. Crider then devised her own ac *611 commodation and presented Dr. Wood with a proposed voluntary shift exchange schedule. The proposed schedule reduced the number of total days the other two Coordinators were responsible for the phone while increasing the number of weekends they were required to carry it. Dr. Wood presented Crider’s proposal to the other two Coordinators, Noah Rost and Alisa Meador, and inquired whether they were willing to exchange shifts to accommodate Crider. Although prior to Crider’s hire Rost and Meador had shared full responsibility for the phone between them, they told Dr. Wood that they were unwilling to resume responsibility for the phone every other weekend, indicating that it would be too burdensome since they could not travel or “disengage” from work.
Dr. Wood decided that she would not force the other two Coordinators to accept Crider’s schedule and met with Crider to discuss other options. Dr. Wood asked Crider if she was willing to carry the emergency phone on the weekends if one of the other Coordinators were out of town, had a family crisis, or in the event of an emergency. Crider maintained that she would not monitor the phone on her Sabbatha.[1] Crider claims that she had other suggestions for an accommodation, such as having Dr. Wood or other departmental staff monitor the phone until a fourth coordinator was hired[2] or having emergency calls forwarded to the campus police. UTK rejected these ideas on the grounds that they were unwilling to pay staff members overtime and that campus police officers were not trained to handle the matters of the PAO. As a result, UTK determined that Crider would not be able to fulfill her job duties, and on June 20, 2008, Crider was terminated.
Crider filed suit alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964. UTK filed a motion for summary judgment on the basis that it could not reasonably accommodate Crider without incurring an undue hardship. The district court granted UTK’s motion, and Crider now appeals.
II.
We review a district court’s grant of summary judgment de novo. Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 894-95 (6th Cir.2004). Summary judgment is proper where “the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.” Nat’l Enters., Inc. v. Smith, 114 F.3d 561, 563 (6th Cir.1997); see also Fed.R.Civ.P. 56(a). The Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. Blackmore, 390 F.3d at 895.
Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer “to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s ... religion[.]” 42 U.S.C. § 2000e-2(a)(l). Short of an undue hardship on the employer’s business, an employer is required to make reasonable accommodations for the *612 religious practices of its employees. 42 U.S.C. § 2000e(j). Once an employer has offered a reasonable accommodation, it has met its duty under Title VII. McGuire v. Gen. Motors Corp., 956 F.2d 607, 609 (6th Cir.1992). However, whether an accommodation is reasonable is determined on a case-by-case basis and is generally a question of fact for a jury. See Smith v. Pyro Mining Co., 827 F.2d 1081, 1085 (6th Cir. 1987); see also EEOC v. Robert Bosch Corp., 169 Fed.Appx. 942, 944 (6th Cir.2006).
To establish a prima facie case of religious discrimination, a plaintiff must show that “(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2)[s]he has informed the employer about the conflicts; and (S)[s]he was discharged or disciplined for failing to comply with the conflicting employment requirement.” Smith, 827 F.2d at 1085. Once the Plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship. Id.
The parties do not dispute the district court’s finding that Crider established a prima facie case of religious discrimination. The question before the Court is whether there is a genuine issue of material fact as to the reasonableness of the accommodation UTK provided Crider and UTK’s ability to reasonably accommodate her without undue hardship.

A. Reasonable Accommodation

“The obligation to accommodate includes efforts to accommodate those employees who refuse to work on particular days of the week because of their religious beliefs.” Id. Reasonable accommodations for religious convictions may include unobjectionable shift exchanges, see id. at 1088, or a transfer to another position which preferably does not adversely affect the employee. Draper v. United States Pipe and Foundry Co., 527 F.2d 515, 519-520 (6th Cir.1975). While Title VII places the affirmative duty to reasonably accommodate on the employer, employees are expected to “make some effort to cooperate with an employer’s attempt at accommodation.” Id.
Crider asserts that upon learning of her religious conflict, UTK failed to offer her a reasonable accommodation. Crider claims to have provided UTK with several options for accommodation that did not require her to work on Friday nights or Saturdays but that UTK considered only one of her proposed ideas for a reasonable accommodation: the voluntary shift exchange. Cri-der maintains that UTK’s rejection of her proposal and its failure to suggests its own accommodation indicates that the University did not comply with its duty to reasonably accommodate her religious needs. Moreover, Crider claims that UTK frustrated her efforts to obtain a reasonable accommodation. Crider also argues that not only did UTK not promote an atmosphere where her ideas for a reasonable accommodation would be “favorably regarded,” [3] it “affirmatively discouraged” her proposal for a voluntary shift exchange.
In response, UTK insists that it tried to reasonably accommodate her when it asked Crider if she could be flexible and agree to carry the phone on the weekends in an emergency situation or when the other two coordinators were out of town. UTK found Crider to be inflexible, uncooperative, and unwilling to strike a. reason *613 able compromise. Although an employee is obligated to cooperate with an employer’s attempt at accommodation, cooperation is not synonymous with compromise, where such compromise would be in violation of the employees’ religious needs. Offering Crider fewer Saturday shifts is not a reasonable accommodation to religious beliefs which prohibit working on Saturdays. See Smith v. Pyro Mining Company, 827 F.2d 1081, 1088 (6th Cir.1987) (holding that “where an employee sincerely believes that working on Sunday is morally wrong and that it is a sin to try to induce another to work in his stead, then an employer’s attempt at accommodation that requires the employee to seek his own replacement is not reasonable.”).
UTK and the district court imply that it is Crider who has the duty to accommodate UTK’s needs and that ultimately she is the one being unreasonable. Aptly stated by the Third Circuit, a Saturday Sabba-tarian’s request for every Saturday off of work due to their religious needs is not per se unreasonable and “[t]o interpret Title VIII in this fashion would effectively remove from the statute’s protection all employees who subscribe to religions with strict prohibitions against Sabbath labor.” Protos v. Volkswagen of America, Inc., 797 F.2d 129, 134 (3d Cir.1986) (disagreeing with the Fourth Circuit’s holding in Jordan v. North Carolina Nat’l Bank, 565 F.2d 72 (4th Cir.1977), that demand for every Saturday off “was so unlimited and absolute in scope ... that [it] speaks its own unreasonableness and is thus beyond accommodation”).
Given the foregoing, it is debatable whether UTK fulfilled its duty to reasonably accommodate Crider, and thus we turn to whether UTK is excused from this duty because providing a reasonable accommodation would create an undue hardship.

B. Undue Hardship ■

UTK insists that requiring its employees to work Saturday shifts every other weekend would have created an undue hardship for Crider’s former co-workers. As support, UTK cites Meador’s threat to quit her job as a Coordinator if forced to carry the emergency phone every other weekend. Crider argues that her former coworkers’ discontent regarding adoption of the voluntary shift exchange amounts to mere “grumbling” and is not enough to establish that UTK’s business will suffer an undue hardship.
This Court has held that “objections and complaints of fellow employees, in and of themselves, do not constitute undue hardship in the conduct of an employer’s business,” noting that “undue hardship is something greater than hardship, and an employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine.” Draper, 527 F.2d at 520 (internal quotation marks omitted). UTK, however, asserts that the Supreme Court in Trans World Airlines, Inc. v. Hardison, et al., 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), held that an accommodation causes an undue hardship where the employee’s coworkers will suffer an imposition and that this holding effectively overruled our decision in Draper.
The district court heavily relied on Har-dison in determining that UTK would incur an undue hardship if it were required to force Rost and Meador to resume responsibility of carrying the emergency phone every other weekend. In reaching this determination, the district court emphasized Hardison’s rejection of the notion that an employer may deprive one employee of their shift choice in order to allow another employee to observe their Sabbath. Hardison held that “[t]he repeated, *614 unequivocal emphasis of both the language and the legislative history of Title VII is on eliminating discrimination in employment, and such discrimination is proscribed when it is directed against majorities as well as minorities.” Hardison, 432 U.S. at 81, 97 S.Ct. 2264. Thus, Title VII also protects Rost and Meador from discrimination on the basis of Crider’s religious needs. And while the issue in Har-dison centered around a seniority system bargained for under a collective bargaining agreement, the language in Hardison suggests that reasonable accommodations are not reasonable when they would result in unequal treatment of employees on the basis of religion.[4] Id. at 84, 97 S.Ct. 2264.
Ultimately, Hardison hinges on the voluntary nature of a shift exchange: Had one of Hardison’s co-workers been willing to forego his seniority privileges and switch shifts, there would have been no issue for the Court to decide. As it was, Hardison was not able to find a volunteer to switch shifts, and thus the Court was tasked with deciding how far TWA was required to go to reasonably accommodate Hardison without undue hardship. The Court found that requiring TWA to breach the contractual rights of its employees by abandoning the seniority system established by a collective bargaining agreement, or to replace Hardison with employees who required premium wages, went too far and created an undue hardship on TWA. Id. at 80, 84, 97 S.Ct. 2264. As the Court explained, to require either scenario would be “[t]o require TWA to bear a more than a de minimis cost in order to give Hardison Saturday’s off.” Id. at 84, 97 S.Ct. 2264. Title VII clearly does not require this result.
UTK seems to twist the district court’s finding and the Hardison decision by insisting that a significant effect on a coworker will suffice to establish an undue hardship. This is an inaccurate reading of the holding in Hardison. Title VII does not exempt accommodation which creates undue hardship on the employees; it requires reasonable accommodation “without undue hardship on the conduct of the employer’s business.” 42 U.S.C. § 2000e(j) (emphasis added).
The Hardison Court was unwilling to deprive employees of their contractual rights under the bargained for seniority system. Hardison, 482 U.S. at 80-81, 97 S.Ct. 2264. The Court reasoned that Title VII itself provides special treatment for seniority systems, see 42 U.S.C. § 2000e-2(h), and thus the adoption of a neutral system, such as seniority, was protected under the Act absent discriminatory intent, despite “discriminatory consequences.” IcL at 82, 97 S.Ct. 2264. Requiring TWA to breach provisions of a collective bargaining agreement and risk the union or other employees filing suit is surely more than a de minimis cost. Thus, Hardison does not stand for the proposition that employee dissatisfaction or inconvenience alone creates an undue hardship; rather, it is the effect such dissatisfaction has on the employer’s ability to operate its business that may alleviate the duty to accommodate.
Appellee labels our decision in Draper as “outdated.” The Fifth Circuit seems to suggest the same in stating, “Draper was decided prior to Hardison, and thus the continuing validity of any implication in Draper that the employer may be required *615 to force other employees into a disadvantageous permanent switch of shifts against their wishes is doubtful.” Eversley v. MBank Dallas, 843 F.2d 172, 176 (5th Cir.1988). However, the Supreme Court’s decision in Hardison did not overrule Draper and it remains good law in this Circuit.
According to Draper, “[i]t is conceivable that employee morale problems could become so acute that they would constitute undue hardship” and that such discontent can lead to “chaotic personnel problems.” Draper, 527 F.2d at 521. Thus, contrary to UTK’s assertions, Hardison and Draper are not in conflict. Both require the employer to show an undue hardship on its business, but also recognize that an accommodation’s effect on a co-worker may lead to an undue hardship on the employer.
Meador’s threat to quit her job as a Coordinator if forced to carry the emergency phone every other weekend does present a colorable claim of undue hardship. If Meador were to leave the department, there would only be one Coordinator available, Rost, to work on Friday nights and Saturdays. Given that Rost has already rejected the idea of working every other weekend, if he had assumed sole responsibility for the emergency phone this would have potentially caused a “chaotic personnel problem.” And as we stated in Draper, personnel problems can lead to undue hardship on an employer. The University, however, has provided nothing to show that Meador’s threat was more than mere “grumbling.” As such, Crider has raised a disputed issue and summary judgment was premature.
UTK also insists that monitoring the emergency phone was not the only duty that Crider would have been unable to perform in light of her religious beliefs. UTK argues that Crider would not have been able to properly function as a Programs Abroad Coordinator because she would have been unable to attend campus outreach programs, activities at various conferences, and “site visits” that often have events on Friday nights and Saturdays. UTK submits that this would require it to send an additional Coordinator with Crider on foreign “site visits,” thereby creating more than a de minimis cost to the school.
UTK determined that “site visits” were an essential job function of a Programs Abroad Coordinator and that it would suffer hardship if Crider remained in the position. Crider did not have the opportunity to participate in a “site visit” prior to her termination, so an accommodation for that situation was not yet necessary, but an employer may show undue hardship before an accommodation has been put into place. See Draper, 527 F.2d at 520; Virts v. Consol. Freightways Carp., 285 F.3d 508, 519 (6th Cir.2002). However, according to Ms. Meador’s deposition testimony, it is possible to “opt-out” of sessions and receptions at conferences and it is possible that events on “site visits” will not be scheduled on Friday nights and Saturdays.
Because a genuine issue of material fact exists as to the possible hardship UTK might suffer by accommodating Crider’s religious beliefs, summary judgment was inappropriate.

C. Frustration of Accommodation

Summary judgment is inappropriate where there is a question as to whether the employer inhibited, frustrated, or impeded volunteers from swapping shifts. McGuire, 956 F.2d at 610. Crider points to Meador’s deposition testimony where Meador indicated that after Dr. Wood spoke with Dr. Rudolph and Chesney about the shift exchange, Dr. Wood told Meador and Rost not to do anything different at work, despite Crider’s request *616 for accommodation. Even if Dr. Wood was simply trying to assess the situation before Rost and Meador agreed, Dr. Wood’s words could be construed as instructing Rost and Meador not to accept the shift exchange. Viewing the evidence in the light most favorable to Crider, we find that she has raised a genuine issue as to whether UTK frustrated, inhibited, or impeded her efforts at obtaining such an accommodation. Because a dispute of material fact remains, summary judgment was an inappropriate disposition of this issue as well.
III.
We conclude, therefore, that the existence of genuine issues of material fact as to both the reasonableness of the accommodation UTK provided Crider and UTK’s ability to reasonably accommodate her without undue hardship preclude summary judgment. Accordingly, we reverse and remand.

. Crider indicates that her religious beliefs would have permitted her to assist in certain types of emergencies on the Sabbath. However, UTK claims she did not inform them of this fact. Crider says she did not inform them because they did not ask.

. Crider insists that during her interview Dr. Wood indicated that a position for a fourth Coordinator already existed and that she was waiting to see if they would receive the funding before it was filled. In late summer of 2008, the department received approval to hire a fourth coordinator.

. 29 C.F.R. § 1605.2(d)(i) refers to voluntary substitutions and "swaps” and encourages employers to "promote an atmosphere in which such substitutions are favorably regarded.”

. We stop short of holding that an employee requesting religious accommodation can never be treated differently. The very nature of this type of accommodation requires that, where an employer operates its business on Saturdays, a Saturday Sabbatarian's accommodation will require another employee to work a Saturday shift. Thus, where an employer is able to reasonably accommodate this religious request, it is essentially treating employees differently on the basis of religion as contemplated by the Act.