*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARTIN TEPPER,

           *Plaintiff-Appellant,*

    *v.*

JOHN E. POTTER, Postmaster General,

           *Defendant-Appellee.*

No. 06-4182

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00343—Solomon Oliver, Jr., District Judge.

Argued: September 18, 2007

Decided and Filed: October 15, 2007

Before: COLE and COOK, Circuit Judges; MILLS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Edward A. Icove, ICOVE LEGAL GROUP, Cleveland, Ohio, for Appellant. Ray E. Donahue, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee. **ON BRIEF:** Edward A. Icove, ICOVE LEGAL GROUP, Cleveland, Ohio, Kenneth J. Kowalski, KRAMER & ASSOCIATES, Cleveland, Ohio, for Appellant. Ray E. Donahue, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee.

_____

**OPINION**

_____

    R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Martin Tepper filed this employment-related action arising from work assignments that began in January 2003. At that time, the Chagrin Falls branch of the United States Postal Service ("USPS") ended an approximately ten-year-long practice of allowing Tepper to avoid Saturday work assignments so that he could observe his Sabbath. Tepper's complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Ohio Rev. Code § 4112.02(A). The district court granted summary judgment to Defendant-Appellee John E. Potter, Postmaster General of USPS, on all counts. Tepper seeks review of the district court's grant of summary judgment as to the claims arising under Title

_____

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1

VII.   We conclude that the district court's grant of summary judgment was not erroneous. Accordingly, we **AFFIRM** the judgment below.

# I. BACKGROUND

## A. Facts

Tepper is a Full-Time Regular Letter Carrier for Chagrin Falls USPS.  He began his employment on May 3, 1980, and became a Messianic Jew during the 1980s.  Messianic Jews hold Sabbath each Saturday and observe Jewish holidays.  In 1992, Tepper requested an accommodation from Chagrin Falls USPS that would allow him to not work on Saturdays.  This accommodation was granted and from April 1992 until January 2003, Tepper was not required to work on Saturdays or other significant Jewish holidays.

The union representing the letter carriers is the National Association of Letter Carriers ("NALC"), of which there is a local Chagrin Falls branch (the "Union").  A national agreement between USPS and NALC governs many of the terms of employment, including that all Full-Time Regular Letter Carriers are required to work a five-day work week.  The national agreement states that all Full-Time Regular Letter Carriers receive Sundays off, with the other day off set on either a fixed or rotating day-off basis, to be determined by the local branches of USPS and NALC.  For all times relevant to this litigation, the local agreement in Chagrin Falls provided for a rotating day-off schedule, although the agreement included an exception for Tepper from 2000 to 2002.  Tepper was aware of the work schedule when he began his employment.

At the time the accommodation was granted, staffing levels at the Chagrin Falls Post Office allowed the supervisors to give Tepper Saturday off without disrupting the rotating day-off schedule of the other employees.  In the early 2000s, staffing levels were decreased due to budget constraints; attempts by local management to obtain additional personnel were not successful.  In 1998, the Chagrin Falls Post Office had twenty-six Full-Time Regular Letter Carriers, nine Part-Time Flexible Carriers, and one Part-Time Regular Letter Carrier.  By 2003, the Chagrin Falls Post Office had twenty-nine Full-Time Regular Letter Carriers, two Part-Time Flexible Carriers, and one Part-Time Regular Letter Carrier.  The Chagrin Falls Post Office management found scheduling Tepper's day off to be difficult given the reduced staffing levels.  They asked letter carriers to voluntarily work on Saturdays that they were not scheduled to work, assigned carriers to work on Saturdays more often than the rotating schedule provided for, and divided Tepper's route among other letter carriers, requiring them to cover his route after completing their own routes.

No formal grievances or complaints were filed regarding the accommodation to Tepper, but Union Steward Paul Hurd and the Chagrin Falls Postmaster at the time, Thomas Pecka, were both aware that some employees were not happy with the arrangement.  Employees "grumble[d]" about missing family and personal obligations on Saturdays in order to allow Tepper the time off.  Hurd asserts that he heard around a dozen complaints over the years from about five employees.  Pecka says that the comments were sporadic, and from around six to eight employees.  Tepper states that on multiple occasions he heard comments from employees who suggested that he should have to work on Saturdays, or who commented on the information Tepper missed during a Saturday meeting.  Tepper also reports that a coworker repeatedly asked him whether he would "blow the Shofar this Saturday," the shofar being a Jewish musical instrument similar to a horn.

In October 2002, the Union held a meeting for all members who worked at the Chagrin Falls Post Office.  Tepper, although a member of the Union, did not attend and was not aware that his accommodation would be discussed.  At the meeting, the members in attendance unanimously voted to recommend termination of Tepper's religious accommodation.  During local contract negotiations later that month, Hurd and Pecka discussed Tepper's accommodation.  It is not clear who initiated

this conversation, but Pecka agreed to terminate the accommodation. As a result, the accommodation was not mentioned in the new local agreement, dated October 30, 2002. Pecka notified Tepper of the change, and it became effective on January 11, 2003.

Pecka told Tepper that his accommodation was terminated due to staffing problems. Hurd states that he believes "the main factor was that management could no longer cover [Plaintiff's] route on Saturdays without putting undue hardship on other people," but that employee complaints were a factor as well. Pecka asserts that the accommodation to Tepper had become a hardship, but that without pressure from the Union the accommodation may not have been terminated. Although the financial analysis had not been completed prior to the termination of the accommodation, the overtime costs of the accommodation were $8,769.60 in 2000 and $7,015.68 in 2001.

When informing Tepper that his accommodation had been eliminated, Pecka encouraged Tepper to reserve some of his vacation time for Saturday absences. Management also allowed Tepper to use annual leave and leave without pay, and to exchange days off with other mail carriers. Chagrin Falls Post Office records show that Tepper was not required to work on 48% of Saturdays in 2003, 73% of Saturdays in 2004, and 50% of Saturdays in 2005 through September 2. This is in contrast to having 92.3% of Saturdays off in 2002.

Tepper contests the removal of his accommodation and contends that the use of annual leave and leave without pay reduces his annual pay and future retirement benefits.

## B. Procedural History

On April 14, 2003, Tepper filed a formal complaint of discrimination with USPS. The USPS investigator stated that "[t]he complaint alleged discrimination based on religion (Judaism) when: from January 11, 2003 and ongoing his religious accommodation of observance (being off/lay off day) on the Sabbath (Saturday) was terminated." Tepper requested a Final Agency decision but did not request a hearing before an administrative judge of the EEOC. The USPS investigation was completed on October 8, 2003, and on December 23, 2003, USPS issued a finding of no discrimination.

Tepper filed the present action on February 19, 2004. His complaint alleges violations of his civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as well as Ohio Rev. Code § 4112.02(A). The district court granted USPS's motion to dismiss or for summary judgment for all of Tepper's claims. Tepper timely appealed the grant of summary judgment as to the alleged Title VII violations.

## II. DISCUSSION

## A. Standard of Review

We review de novo a district court's decision to grant summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-52 (1986).

**B. Tepper's Religious Accommodation Claim**

Tepper sets forth a religious accommodation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Title VII states in part:

It shall be an unlawful employment practice for an employer - -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or

(2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . . .

42 U.S.C. § 2000e-2(a). Religion is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

"The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). To establish a prima facie case, Tepper must show that "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Id.* (citation omitted); *but see Lawson v. Washington*, 319 F.3d 498, 499-500 (9th Cir. 2003) (Berzon, J., dissenting from denial of rehearing en banc) (arguing that the failure to accommodate is itself a Title VII violation.)

Once an employee has established a prima facie case, the employer has the burden "to show that it could not reasonably accommodate the employee without undue hardship." *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002) (citations omitted). For the purpose of religious accommodations, "[t]o require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship." *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)).

Neither side disputes that the first two prongs of the prima facie case have been met. Tepper meets the first prong because he holds a sincere religious belief that conflicts with the rotating schedule at Chagrin Falls Post Office. Tepper meets the second prong because he informed Chagrin Falls Post Office of his conflict. The third prong of the prima facie case is whether Tepper can demonstrate that he has been discharged or disciplined. We conclude that he cannot.

Tepper asserts that he has been forced to take days off from work without pay in order to avoid Saturday work, and that these days off reduce his annual pay and eventual pension. However, more than loss of pay is required to demonstrate discipline or discharge. The Supreme Court has stated that "the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71 (1986) (quoting *Nashville Gas Co. v. Satty*, 434 U.S. 136, 145 (1977)). Tepper is simply not being paid for the time he does not work; he has not been disciplined or discharged.

Tepper argues that *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629 (6th Cir. 2003) provides support for his religious accommodation claim. In *Goldmeier*, the plaintiffs chose to terminate their employment prior to being disciplined by their employer and prior to the start of the policy change that would require them to work on Saturdays. *Id.* at 632. This Court held that they were not constructively discharged, and restated the requirements of making such a showing:

> "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999); *see also Logan v. Denny's Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001).

*Id.* at 635. Putting aside the fact that Tepper did not quit, there is no evidence that Chagrin Falls Post Office deliberately created intolerable working conditions, or that there was any intention that the Saturday work requirement was designed to force Tepper to quit. *Goldmeier* went further to reiterate this Court's requirement that a plaintiff must demonstrate discipline or discharge to succeed in a religious accommodation claim. *Id.* at 637. Tepper has not been disciplined or discharged, and thus *Goldmeier* provides no aid to Tepper.

Because Tepper cannot make out a prima facie case, his religious accommodation claim fails. We therefore affirm the district court's grant of summary judgment as to Tepper's religious accommodation claim.

## C. Tepper's Religious Discrimination Claim

Tepper also appeals the dismissal of his religious discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. To assert a successful claim of religious discrimination under Title VII, a plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he experienced an adverse employment action, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The second prong looks at whether the employee experienced a "materially adverse" employment action. *Ford v. Gen. Motors Co.*, 305 F.3d 545, 553 (6th Cir. 2002); *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999).[1] A materially adverse employment action is

> a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Such a change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

---

[1] The Supreme Court has recently expanded the definition of "adverse employment action" for the purposes of a Title VII retaliation claim. *Burlington N. and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006). In doing so, the Supreme Court distinguished the purposes of the anti-retaliation provision from the anti-discrimination provision in Title VII. *Id.* at 2411-15. *Burlington Northern* did not expand or alter this Court's formulation of an adverse employment action for purposes of the discrimination claim before us.

*Ford*, 305 F.3d at 553 (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)).

If the plaintiff is able to present a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then the burden shifts back to the plaintiff who must show that the defendant's proffered reason is a pretext for discrimination. *Id.* at 804.

### 1. Direct Evidence

Tepper has not presented direct evidence of religious discrimination. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Such evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* Tepper has presented no such evidence. Tepper states that some coworkers made comments that were discriminatory. But the employees comments were vague, were not overtly discriminatory in nature, were not made by decision-makers, and fall far short of compelling the conclusion that animus factored into the termination of Tepper's accommodation.

### 2. Prima Facie Case

Because Tepper has not presented direct evidence of discrimination, Tepper has the burden of presenting a prima facie case of indirect discrimination. Tepper has established that he is Jewish and thus a member of a protected class. This Court assumes that Tepper is qualified for his position because he has held the position for over twenty years and USPS does not assert otherwise. However, Tepper fails on both of the remaining prongs of the prima facie case.

As for the second prong, Tepper has failed to show that he suffered a materially adverse employment action. Tepper must demonstrate the existence of a materially adverse "change in the terms or conditions of employment because of the employer's actions." *Allen*, 165 F.3d at 410 (citation omitted). As was true in the religious accommodation context, Tepper's reduced pay corresponding with the time he did not work does not affect his employment opportunities or job status. *Ansonia Bd. of Educ.*, 479 U.S. at 70-71. Because Tepper is simply not being paid for time that he has not worked, Tepper's reduction in pay does not constitute a materially adverse employment action for purposes of religious discrimination.

Tepper also fails on his claim that his coworkers' comments constituted religious discrimination through a materially adverse employment action. Title VII does not provide protection from discriminatory behavior such as "sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). Tepper has accused a handful of employees of occasionally making comments about his accommodation and observance of the Jewish Sabbath. These comments stretched over a decade and were not common or regular and, with the exception of one comment, were limited to comments about Tepper's attendance. The one remaining comment, "Are you going to blow the Shofar this Saturday?," was directed towards Tepper and his practice of Judaism, but falls within *Farragher*'s description of what Title VII does not cover. *Id.*

Tepper argues that the removal of the accommodation constitutes a materially adverse employment action and amounts to discrimination. However, the removal of the accommodation did not result in a change of title, job status, pay, or job responsibilities and conditions. While

Tepper now has to work on Saturdays, this is simply a requirement of the job for which he was hired; it is not an adverse change in employment.

Tepper also fails on the fourth prong of the prima facie case. Tepper has not shown that he was replaced by a person outside his protected class or that he was treated differently than similarly situated employees. Tepper asserts that he has been treated differently than his coworkers. He asserts that all Full-Time Regular Letter Carriers besides himself are able to avoid work on their Sabbath. However, the record does not show this. There is no evidence that the other employees observe Sabbath on Sunday. In addition, there is no evidence that the purpose of the Sunday day off is to allow workers to observe their Sabbath. In this case, the Sunday day off occurs because only special deliveries are made that day, so the employer's needs are minimal on Sunday. Tepper's coworkers are granted Sunday off not so that they may celebrate their Sabbath, but because it fits the needs of their employer. Consequently, all employees are treated equally; they are required to work a five-day work week with a rotating day off.

Because Tepper cannot make out a prima facie case of religious discrimination, we AFFIRM the district court's grant of summary judgment as to Tepper's discrimination claim.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Defendant-Appellee on both of Tepper's claims arising under Title VII of the Civil Rights Act of 1964.