NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0484n.06

No. 22-3338

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 30, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| STEPHANIE BAGGETT, | ) | |
|     Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| CITY OF CINCINNATI, OHIO, | ) | |
| | ) | OPINION |
|     Defendant-Appellee. | ) | |
| | ) | |

Before: READLER, MURPHY, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Stephanie Baggett appeals the district court's order granting summary judgment to the City of Cincinnati on her Title VII gender discrimination claim. Baggett claims that she was denied overtime due to her gender. For the reasons set forth below, we **AFFIRM** the district court's order granting the City's motion for summary judgment.

**I.**

Baggett has worked for the City since 1990. In 2015, she started a new position as a storekeeper with the City's Metropolitan Sewer District ("MSD"). There are a total of three storeroom locations for MSD: the Main Gest Street storeroom[1], the CMF storeroom, and the Little Miami storeroom. Baggett testified that she trained at the Main storeroom and worked at that location for a few months. Then, she was assigned to work at the Little Miami storeroom. Baggett retained badge access to the Main storeroom.

---

[1] The Main Gest Street storeroom is sometimes referred to in the record as Mill Creek. (*See generally* Op. & Order, R. 37.) We will refer to it as the Main storeroom.

From 2015 to late 2017, Baggett was not offered overtime in her role as Little Miami's storekeeper. During the same time period, Andy Messer ("Messer"), Rick McGuire ("McGuire"), and Perry Rolf ("Rolf") were employed as storekeepers by the City and received overtime. Messer, McGuire, and Rolf are all males who worked primarily in either the Main storeroom or the CMF storeroom, whereas Baggett is a female who worked primarily in the Little Miami storeroom.

Baggett, Messer, McGuire, and Rolf worked under the same supervisor—Tiffany Lawrence-Glenn, a supervising managing analyst for MSD at the relevant time. Each storeroom location used the same inventory management system but contained different merchandise. The Little Miami storeroom was smaller than the other two storerooms.

Baggett contends that she complained multiple times about not being offered overtime. Ultimately, on November 8, 2017, she filed an EEOC complaint alleging that she was not offered overtime because of her race and gender.

In December 2017, MSD management created a new overtime policy wherein overtime would be allocated among all storekeepers. Following the policy change, Baggett began to receive overtime.

The City claims it changed the overtime policy to institute a "virtual storeroom" program to keep better track of inventory location and quantities across the different storeroom locations. Ultimately, the "virtual storeroom" program did not come to fruition. Prior to the policy change, Baggett did not receive overtime for operational reasons; namely, it was the practice that overtime be allocated to individuals working in locations that required overtime. Thus, because Baggett was working at the Little Miami storeroom, which did not require overtime, she was not allocated overtime. Further, the City contends that Baggett was not qualified to work at the other storeroom locations without additional training.

On December 13, 2019, Baggett filed suit alleging that the City discriminated against her on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* After the City filed its motion for summary judgment, Baggett withdrew her race discrimination claim. The district court granted summary judgment to the City on the gender discrimination claim. Baggett timely appealed the summary judgment decision to this Court.

**II.**

We review a district court's grant of summary judgment *de novo*. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343 (6th Cir. 2021). We "view the facts in the record and the reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case for gender discrimination, a plaintiff must show she was: (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) replaced by a person outside the protected class or treated differently than similarly situated male employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992); *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

A plaintiff can prove gender discrimination through either direct or circumstantial evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008). "Direct

evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotations omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

Where a plaintiff seeks to establish her claim through circumstantial evidence, courts analyze the claim through the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). First, the plaintiff must establish a prima facie case of discrimination, which we assume for argument's sake to be the case here. *See Tepper*, 505 F.3d at 515. The defendant can respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Id.* Lastly, the burden returns to the plaintiff to show that the defendant's proffered reason is mere pretext for discrimination. *Id.* at 515–16. Throughout this *McDonnell Douglas* framework, the plaintiff maintains the ultimate burden of persuasion. *White*, 533 F.3d at 392.

The City has met its burden of establishing a legitimate, nondiscriminatory reason for not giving Baggett overtime. The City allocated overtime based on a storekeeper's primary location for operational reasons. Thus, because Baggett's primary location was the Little Miami storeroom, where overtime was not needed, she was not offered overtime. The City also contends that Baggett was not qualified to work at the other storerooms without additional training. Further, the City notes that the overtime policy was changed in late 2017 to equalize overtime between all storekeepers as part of implementing a new "virtual storeroom" inventory management system.

To survive summary judgment, Baggett was required to show that the City's proffered reason for not allocating overtime to her was mere pretext to hide the discrimination. "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (internal quotations and citation omitted). "[T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Id*. Ultimately, "[t]o demonstrate pretext, a plaintiff must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful [discrimination]." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (opining that a plaintiff must show that "*both* the [proffered] reason was false, *and* that discrimination was the real reason").

Baggett seeks to rebut the City's proffered reason by pointing to the union contract wherein the City agreed to try to equalize overtime, as well as create overtime lists for "work units" where overtime was regularly used. In support of her argument, Baggett offers the affidavit of Jeremy McCleese, the vice president of her union, to prove she was in a work unit with her male comparators. In summary, it appears that Baggett's argument concerning the union contract is: (1) the City was required to attempt to divide overtime equally among a "work unit," (2) Baggett was in the same "work unit" as her male comparators, (3) Baggett should have been allocated equal overtime as a member of this "work unit," (4) Baggett was not provided equal overtime by the City in violation of its contractual obligation, and (5) there was no need to change the overtime

policy in late 2017 to equalize overtime because the contract already required that the overtime be equalized. Essentially, Baggett argues the City's proffered reason for not giving her overtime and for changing the policy has no basis in fact.

Baggett has failed to establish a factual dispute regarding whether the union contract dictated the City's allocation of overtime such that denial of overtime to her was discriminatory. The union contract does not define a "work unit." McCleese provided a definition of "work unit" based on his duties and experiences as a union official. But, there is no evidence that McCleese's stated definition was used by the City. Further, under the union contract, the City retains discretion to "[d]irect the work of its employees" and "[d]etermine the methods, means and personnel by which operations are to be carried out." (R. 33-1, PageID 2330.) The City submitted evidence that it divided overtime based on location and operational need at MSD. Making all reasonable inferences in Baggett's favor, the terms of the union contract do not suggest that the City's proffered reason for not giving Baggett overtime until late 2017 was not based in fact.

Baggett also argues that the City's claim that she was not qualified to work at any storeroom other than the Little Miami storeroom has no basis in fact. Baggett contends that she was qualified to work at the other locations without additional training, that she did work at the Main storeroom on occasion, and that she had badge access to the other locations. A reasonable jury could find from the facts in the record that Baggett did not require further training to work in the other locations, had access to those locations, and even worked at the other locations at times. But, Baggett has made no factual showing (or argument) that the City's true motivation in claiming that she needed additional training was discriminatory rather than based on the fact that Baggett was primarily assigned to, and trained at, the Little Miami storeroom. Baggett's immediate supervisor and the superintendent of her division both testified that they genuinely believed she needed further

6

training. Baggett has not attempted to refute these statements beyond relying on her conclusory affidavit testimony. And Baggett has put forth no evidence from which a reasonable factfinder could determine that the City's real reason for not allocating overtime to her was gender discrimination. *See Ford Motor*, 782 F.3d at 767. Thus, even if Baggett has shown that the City was mistaken in its belief she needed more training, she has not shown that its true motivation was gender discrimination.

Baggett also argues that the City's virtual storeroom project did not actually motivate the City to offer her overtime for the first time; rather, she claims it was contrived pretext because the virtual storeroom was never implemented. Baggett appears to recognize that a large change in the inventory management system could necessitate a change to overtime allocation, but she argues the City changed the overtime policy in response to her EEOC complaint, not because of the virtual storeroom program. The City detailed the reasons it wanted to implement the virtual storeroom program and why that program could necessitate more overtime at all MSD storeroom locations. Baggett responds to this by pointing out that the virtual storeroom was never implemented, but her supervisor was directed to equalize overtime for all MSD storekeepers regardless of location. The direction to equalize overtime was made in December 2017. While the timing "'gives us pause,' 'temporal proximity cannot be the sole basis for finding pretext.'" *Ford Motor*, 782 F.3d at 767 (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012)).

Baggett also contends that she repeatedly complained to her supervisor about not receiving overtime and that she was never told the City allocated overtime based on "operational needs" and that she was "not qualified." But, Baggett's own deposition testimony directly contradicts this claim. Baggett testified that she was told "we're going to have some overtime out here in Little Miami and you're going to be the first storekeeper that will be offered it" in "various of the

meetings" she had with her supervisor. (R. 20, PageID 2178.) This testimony suggests that Baggett was informed overtime was allocated based on operational needs at locations. Further, just because Baggett was not informed of the City's full reasoning for not offering her overtime does not mean that the City had a discriminatory motive.

Overall, Baggett has presented insufficient evidence to raise a material issue of fact as to pretext.

## III.

For the reasons stated above, we **AFFIRM** the district court's order granting the City's motion for summary judgment.