NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0110n.06

No. 23-5932

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 26, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| K&M KNIGHTS EXPRESS, INC., | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| HULLETT'S SERVICE CENTER, LLC, | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; MOORE and RITZ, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-appellant K&M Knights Express, Inc. (K&M) appeals from the district court's grant of summary judgment in favor of defendant-appellee Hullett's Service Center, LLC (HSC). Because we agree with the district court that K&M presented insufficient evidence of causation to survive summary judgment, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

In May 2021, K&M, a Georgia-based trucking company, sent one of its trucks, a 2012 Volvo semi-truck, to HSC's shop in Manchester, Tennessee for repairs after the truck broke down in Tennessee. R. 6 (Am. Compl. ¶¶ 2, 6–9) (Page ID #17–18); R. 51-1 (Invoice) (Page ID #106). HSC performed several repairs.[1] Most relevant for our purposes, HSC replaced the engine with a

---

[1]On appeal, K&M does not renew its claims that HSC's negligent replacement of the truck's clutch and installation of the motor mount caused damage to the truck. We therefore do not reach those claims. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by

used model and, to make the replacement engine fit, altered the truck's frame.  R. 55 (Statement of Material Facts ¶¶ 1, 4) (Page ID #1020–21).[2]

The truck began to leak oil in June 2021.  *Id.* ¶¶ 7–8, 12 (Page ID #1021–22).  K&M operated the truck continuously for at least 119,988 miles from June 2021 to December 2021, but did not repair the oil leak.  *Id.* ¶¶ 11–13 (Page ID #1022).  Instead, K&M instructed its drivers to replenish the oil and continue operating the vehicle until the engine ultimately failed on December 15, 2021.  *Id.* ¶¶ 14–15 (Page ID #1022–23).  When K&M asked mechanic Tony Douglas to assess the truck after the final breakdown, he found that there was oil "[p]retty much kind of all over the engine" and that the engine had "locked up" and could not be started.  R. 51-9 (Douglas Dep. at 10, 12, 14) (Page ID #500, 502, 504).  Douglas could not identify where the leak originated.  *Id.* at 13 (Page ID #503).

K&M brought this diversity suit against HSC seeking damages under state law for negligence, breach of implied contract, and breach of implied and express warranties.  R. 6 (Am. Compl. ¶¶ 32–55) (Page ID #21–23).  K&M alleged that HSC's repair work had "irreversibly damaged" the truck and rendered it "unsafe to drive," *id.* at ¶¶ 26, 28–29 (Page ID #20), and argued that there was evidence that HSC's alteration of the frame decreased the truck's value, R. 56 (Opp. to Summ. J. at 15) (Page ID #1039).  K&M also argued that there was evidence that HSC's replacement of the engine caused the oil leak and ultimate engine breakdown.  *Id.* at 17 (Page ID #1041).  After discovery, HSC filed a motion for summary judgment on each claim, which the

---

some effort at developed argumentation, are deemed waived." (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995))).

[2]The parties dispute whether HSC altered the frame by cutting it or by grinding it.  R. 55 (Statement of Material Facts ¶ 4) (Page ID #1021).  The difference is not material for our purposes.

district court granted in full. R. 83 (Op. and Order) (Page ID #1741); *K&M Knights Express, Inc. v. Hullett's Serv. Ctr., LLC*, No. 4:22-CV-00015, 2023 WL 6429640 (E.D. Tenn. Oct. 2, 2023).

The district court found that there was no dispute of material fact as to the causation element of K&M's claims. As relevant on appeal, K&M had "failed to present any evidence beyond 'metaphysical doubt' that the value of the truck was decreased due to Defendant's alteration of the frame." *K&M Knights Express, Inc*., 2023 WL 6429640, at *3. And, K&M had "failed to put forth any facts showing that [HSC's allegedly negligent installation of the used engine] caused the breakdown of the engine. Rather, the record is clear that no one, not even Plaintiff's expert, knows why the engine seized up in December 2021." *Id.* at *4. On appeal, K&M argues that the district court erred by improperly weighing the credibility of its evidence and argues that this evidence, when construed in K&M's favor, created a dispute of material fact about whether HSC's work caused K&M's alleged injuries.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *Tepper v. Potter*, 505 F.3d 508, 513 (6th Cir. 2007). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). To defeat summary judgment, an

"opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

## B. Causation

The parties and district court apply Tennessee law to K&M's common-law claims and, accordingly, we do the same. Causation is an essential element of each of K&M's claims. *See McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991) (negligence); *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (breach of contract); *Smith v. TimberPro Inc.*, No. W2018-00878, 2019 WL 238113, at *5 (Tenn. Ct. App. Jan. 17, 2019) (breach of warranty). To show causation under Tennessee law, "[t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced," no reasonable basis for a finding of causation exists. *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985) (quoting William L. Prosser & W. Page Keeton, Torts § 41 (5th ed. 1984)); *see Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 852 (Tenn. 2017) (holding that defendant-contractors were entitled to summary judgment on claim that their negligence caused a fire because evidence that defendants handled flammable substances and smoked cigarettes in the area of the fire did not "link these alleged acts to the fire" and could not establish causation).

In its motion for summary judgment, HSC argued, as it does before us now, that there was no record evidence affirmatively showing that HSC's alteration of the truck's frame caused any damage to the truck or decrement in its value. R. 51 (Mot. for Summ. J. at 14–17) (Page ID #96–

99). To the contrary, HSC pointed out, it was undisputed that K&M operated the truck safely for six months after discovering that HSC had altered the frame. *Id.* And, HSC pointed to evidence that K&M's witnesses did not know what caused the oil leak or the engine's ultimate breakdown. *Id.* at 8 (Page ID #90). K&M argues that there is a dispute of material fact as to causation, relying on witness testimony amounting to speculation and conjecture that HSC's repairs *could have* caused K&M's alleged injuries. Faced with the other record evidence, a rational trier of fact could not find by a preponderance of the evidence that HSC caused injury to K&M. The district court correctly granted HSC's motion for summary judgment.

### 1. The Frame

K&M argues that the district court erred when it found that K&M had produced no evidence that HSC's alterations to the truck's frame caused K&M's alleged injuries. On appeal, K&M argues it has produced evidence of causation, including in the form of testimony by mechanic Tony Douglas. Appellant Br. at 19. But Douglas testified only about the *possible* effects of the frame alteration and did not opine as to what effect the frame alteration actually had on the value of K&M's truck. Douglas testified that it "would be kind of hard for [him] to say if [the frame alteration] raised [a] safety issue or not" but that he thought it "could have possibly . . . eventually caused that frame to actually crack or break" in the area where it had been altered. R. 51-9 (Douglas Dep. at 21–22) (Page ID #511–12). As to the impact of the frame alteration on the specific vehicle in question, when prompted by K&M's attorney, Douglas suggested that K&M "may be able to sell [the truck] at a lesser value" because of the alteration. *Id.* at 22 (Page ID #512). Douglas engaged in conjecture and speculation about the possible effects of frame alteration, but he did not opine about whether the frame alteration in fact caused K&M's alleged

injuries. This evidence, without more, could not support a jury verdict in K&M's favor. *See Lindsey*, 689 S.W.2d at 861.

The other evidence that K&M proffers in support of its frame theory is not relevant to the issue of causation. K&M points to mechanic Tremarcus Williams—a lay witness who had examined the truck's frame after HSC worked on it—who testified that it "would definitely be inappropriate" to alter a truck's frame as HSC did, noting that manufacturers put labels on truck frames instructing mechanics not to cut truck frames because cutting frames "weakens the metals." R. 51-10 (Williams Dep. at 8–10, 13) (Page ID #543–45, 548). But, Williams concluded, he "really [couldn]'t say or answer [the] question" of whether altering the frame "would have any effect on the truck itself in any way." *Id.* at 13 (Page ID #548). Tom Ward, who K&M proffered as an expert witness,[3] opined generally that cutting the frame went "against the truck manufacturer's guidelines," as well as the stickers and warnings on the frame itself. R. 51-11 (Ward Dep. at 32–33, 40) (Page ID #593–94, 601). Ultimately, the Williams and Ward testimony that a mechanic *should not* alter a truck's frame is evidence that a mechanic who does so is negligent, but it is not evidence that the mechanic's negligence caused any injury. *See Jenkins*, 515 S.W.3d at 852 ("Proof of negligence without proof of causation is nothing." (quoting *King v. Anderson County*, 419 S.W.3d 232, 247 (Tenn. 2013))).

---

[3]HSC asserts that K&M failed timely to disclose Ward as an expert, that Ward is unqualified and unreliable, and that his opinion relies on improper legal conclusions. Appellee Br. at 38–51 (incorporating R. 53 (Mot. to Exclude Ward) (Page ID #630)). We need not reach these arguments because, even if Ward's testimony were proper expert testimony, it could not support a jury finding that HSC's alteration to the truck's frame caused K&M's alleged injuries.

**2. The Engine Replacement**

K&M next argues that it presented sufficient evidence to create a jury question about whether HSC's replacement of the engine caused an oil leak, and whether the leak in turn caused the engine to seize up. For this assertion, K&M relies almost exclusively on testimony by Douglas that, when rebuilding an engine, "the process is to replace all seals and everything that oil pressure is subject to, which would actually create that leak if there was components that wasn't replaced." R. 51-9 (Douglas Dep. at 23) (Page ID #513); *see* Appellant Br. at 25–26.

Douglas's testimony, however, cannot support a finding by a reasonable jury that HSC's replacement of the engine caused the oil leak or the truck's final breakdown. Douglas expressly disclaimed an opinion on causation, saying he "[did]n't know what the specific cause of the [engine] failure [was]." R. 51-9 (Douglas Dep. at 15–16) (Page ID #505–06). When asked directly if he believed that HSC was "negligent or made mistakes in th[e] [engine] installation which resulted in" the oil leak, Douglas testified that he "[could]n't actually say per se what [HSC] . . . did or didn't do to that engine and why it would actually have those oil leaks," and that he "[did]n't have a real opinion" about what caused the engine to seize up. *Id.* at 24–25 (Page ID #514–15). A reasonable jury, faced with Douglas's express disavowal of any opinion on the cause of the oil leak or engine failure, could not find by a preponderance of the evidence that HSC's replacement of the engine caused either the leak or the engine failure. The district court did not err by granting HSC's motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.