NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0320n.06

No. 24-4025

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 02, 2025
KELLY L. STEPHENS, Clerk

FRANK SAVEL; DANIELLE CROCKETT,

    Plaintiffs-Appellants,

    v.

THE METROHEALTH SYSTEM,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: SUTTON, Chief Judge; CLAY and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. The MetroHealth System required its employees to become vaccinated against COVID-19. Frank Savel, a nurse at MetroHealth, applied for a religious exemption from the vaccine mandate. After MetroHealth denied his request, Savel sued for religious discrimination under Title VII and Ohio Revised Code § 4112. The district court granted MetroHealth summary judgment, and Savel appealed. We affirm.

**BACKGROUND**

MetroHealth is a county-owned hospital in Cleveland, Ohio. In August 2021, it required its entire workforce to get vaccinated against COVID-19. At the same time, MetroHealth allowed employees to request exemptions for medical or religious reasons. MetroHealth received over 400 such exemption requests. But an intervening COVID-19 surge and shifting public health guidance delayed its decisions. In the meantime, MetroHealth treated those awaiting decisions as compliant with its policy. MetroHealth ultimately reached its decisions in early 2022, when it granted only a

small number of both religious and medical requests. It did so after individually assessing the health and safety risks posed by each request, including the risks of exempting applicants in patient-facing positions.

Frank Savel, an intensive-care nurse in MetroHealth's main campus, requested a religious exemption from the vaccine requirement. In February 2022, MetroHealth denied his request. MetroHealth found that Savel had a sincere religious belief that conflicted with the vaccine mandate, but that exempting him would cause the hospital an undue hardship. MetroHealth told Savel that alternative protocols like masking were "far less effective" and placed "patients, coworkers, and others at significant risk." Denial Email, R. 12-2, PageID 312. Given that risk, MetroHealth determined that remote work was the only accommodation it could offer. But Savel had a frontline job serving COVID-19 patients and could not work remotely. So MetroHealth gave him 45 days to get vaccinated or apply to switch to a remote position.

A month later, and shortly before the vaccination deadline, MetroHealth announced it would grant previously denied religious exemptions. At the time, positivity rates were at a record low, winter was over, and forecasts looked favorable. MetroHealth thus determined that the "costs and burdens" of granting those exemptions had "changed in a material way." Announcement, R. 12-2, PageID 434–35. But the change came late for Savel, who had already left MetroHealth for a comparable job elsewhere.

In late 2022, Savel and 45 other employees sued MetroHealth for religious discrimination under Title VII and its Ohio counterpart. 42 U.S.C. §§ 2000e–2(a), 2000e(j); Ohio Rev. Code § 4112. The district court dismissed the entire case for lack of standing and failure to state a claim. We affirmed that ruling except as to Savel's and Danielle Crockett's claims. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 937, 942–45 (6th Cir. 2024). On remand, Crockett moved to voluntarily dismiss

her claims without prejudice, but the district court dismissed with prejudice instead. Only Savel's claims remained.

As for those claims, the district court granted MetroHealth summary judgment. It held that Savel had failed to genuinely dispute MetroHealth's assertion of undue hardship, so his accommodation claim failed. It also found no evidence that MetroHealth denied Savel an exemption because of his religion, so it granted summary judgment on his disparate treatment claim as well. This appeal followed.

## ANALYSIS

On appeal, Savel challenges the district court's grant of summary judgment for MetroHealth on his discrimination claims, as well several related discovery rulings. And Crockett challenges the district court's dismissal of her claims with prejudice. We address each in turn.

## I. Summary Judgment

We review the district court's grant of summary judgment de novo. *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 529 (6th Cir. 2024). We affirm if there "is no genuine dispute as to any material fact" and MetroHealth "is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). Savel contends that MetroHealth violated Title VII and its Ohio analog in two ways: by failing to accommodate his religious beliefs and by treating his request for a religious exemption worse than non-religious requests. Since Ohio law mirrors Title VII, we focus our analysis on Savel's Title VII claims. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).

We start with Savel's accommodation claim. Title VII requires employers to reasonably accommodate employees' religious beliefs unless doing so would impose an undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023). An employer's failure to do so constitutes religious discrimination. *Id.* at 457–58; *Savel*, 96 F.4th at 943 n.4. At summary judgment, Savel must first

present a prima facie case of religious discrimination. *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). If he does, the burden shifts to MetroHeatlth to show "undue hardship," *id.*, meaning a "substantial" burden in the overall context of its business, *Groff*, 600 U.S. at 468. We assume without deciding that Savel has carried his prima facie burden.

Even so, MetroHealth has shown that in the winter of 2022, exempting employees like Savel would have posed an undue hardship to its operations. Consider Savel's patient-facing role. Savel was a nurse in one of MetroHealth's intensive care units (ICU). He served patients on the "front lines" of the pandemic. Savel Dep., R. 54-1, PageID 3604–05. And as an ICU nurse, he interfaced with some of the hospital's sickest COVID-19 patients.

Consider now the context in which MetroHealth denied Savel's exemption request. In late December 2021, MetroHealth experienced a winter COVID-19 surge, with nearly 1,000 staff testing positive. The surge had passed by February, when MetroHealth denied Savel's exemption request. But the hospital still feared the possibility of another winter wave. In that context, it determined that exempting patient-facing employees like Savel would pose a "significant risk" to its community. Denial Email, R. 12-2, PageID 312. It reasonably concluded that exposing others to such a preventable risk would substantially burden its core function: "to protect the health and safety" of its staff and patients. *Id.*

Savel has failed to genuinely dispute MetroHealth's asserted undue hardship. He questions MetroHealth's safety concerns, but he does so based on his own subjective belief, which is not enough to withstand summary judgment. *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1061 (6th Cir. 2024). He also asserts that MetroHealth violated Title VII simply because it did not engage in an "interactive process" with him. Appellant Br. at 17. But we have never recognized such a requirement under Title VII. *Kizer v. St. Jude Child.'s Rsch. Hosp.*, No. 24-5207, 2024 WL

4816856, at *5 (6th Cir. Nov. 18, 2024). And even if we had, MetroHealth would have satisfied it. MetroHealth invited Savel to explore its remote job openings and offered its staff's help. Savel declined, preferring an in-person job instead. So over a month before the vaccination deadline, he accepted a comparable (and better-paying) job as an in-person nurse at a different hospital. But Savel's preference for an in-person position does not mean MetroHealth failed to engage with him in "good faith." *Rorrer v. City of Stow*, 743 F.3d 1025, 1040–41 (6th Cir. 2014). Accordingly, the district court properly granted summary judgment on Savel's accommodation claim.

We next turn to Savel's disparate treatment claim. Savel does not rely on direct evidence of religious discrimination, so the *McDonnell Douglas* framework applies. *Tepper*, 505 F.3d at 515. Under that framework, Savel must first present a prima facie case of discrimination. *Id.* That means he must produce evidence that (1) he belonged to a protected class, (2) he qualified for his position, (3) he suffered an adverse action, and (4) the action occurred under circumstances that support an inference of discrimination. *See Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364–65 (6th Cir. 2007); *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1545 (2025). If he meets this burden, MetroHealth may articulate a legitimate, nondiscriminatory reason for its adverse action. *Tepper*, 505 F.3d at 515. If it does, Savel must genuinely dispute that reason as pretext for discrimination. *Id.* at 515–16.

The circumstances presented by this case do not support an inference of discrimination— the fourth element of Savel's prima facie case. One way to satisfy that element is through evidence that the employer treated people outside the protected class more favorably in similar situations. *Macy*, 484 F.3d at 365. Savel relies on that approach, contending that MetroHealth treated medical requests more favorably than religious ones. At the pleading stage, he alleged MetroHealth did so by blanket-denying all religious requests while granting some medical ones. *See Savel*, 96 F.4th at

937, 944. And we held that allegation sufficient to survive a motion to dismiss. *Id.* at 944. But at this stage, the record does not support Savel's allegation. Instead, it shows that MetroHealth granted a small number of both medical and religious requests. Savel insists that, even so, MetroHealth still evaluated medical requests under more favorable standards. But he does not point to evidence of what those standards were. Nor does he identify a similarly situated employee—like an in-person ICU nurse or doctor—who received a medical exemption when he was denied a religious one. Without such evidence, a jury could not infer that religion—rather than the health concerns the hospital articulated—played a role in the hospital's decision. So Savel's disparate treatment claim also fails.

## II.     Procedural Challenges

Savel next challenges certain discovery and scheduling rulings by the district court. We review those rulings for abuse of discretion. *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 256 (6th Cir. 2023). We reverse only if they were "arbitrary, unjustifiable, or clearly unreasonable." *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019) (citation omitted). Short of that, we defer to the district court's "broad discretion" over discovery and scheduling matters. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018); *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014).

Savel contends that he had too little time to seek discovery before he had to file his opposition to summary judgment. Savel knew the summary judgment briefing schedule months in advance. But he did not seek any discovery until after MetroHealth moved for summary judgment. At that time, discovery was still open. So when his opposition came due, Savel asked for a one-month briefing extension under Federal Rule of Civil Procedure 56(d) to gather supporting evidence. The district court granted Savel an extra week instead, giving him a total of 21 days to

file his opposition. Savel says 30 days was the "norm," and that denying him more time for discovery was an abuse of discretion. Appellant Br. at 20.

Our review largely turns on Savel's "diligen[ce] in pursuing discovery." *Doe*, 928 F.3d at 491 (citation omitted). Before the district court granted MetroHealth's motion to dismiss, Savel had three months to seek discovery. After we remanded, he had four more. That was a reasonable amount of time for Savel to conduct some discovery. *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 625 (6th Cir. 2014). Yet he did not serve a single discovery request in that period. He now argues that MetroHealth's summary judgment materials raised "new issues," that is, they contained evidence that MetroHealth granted some religious exemptions. Appellant Br. at 21. But Savel can hardly claim surprise at that evidence. From day one, he rested his claims on an allegation that MetroHealth blanket-denied all religious requests. And MetroHealth specifically denied that allegation in its answer to Savel's complaint. So Savel had both enough time and notice to factually develop that key issue but failed to do so. Given his lack of diligence, the district court did not abuse its discretion in denying him an extension. *See Marie*, 771 F.3d at 366–67.[1]

Savel's other challenges are variations of the same. He argues that before granting summary judgment, the district court should have addressed his evidentiary objections to MetroHealth's evidence. As a general matter, Savel is not wrong. Courts generally should decide issues that affect the record before ruling on summary judgment. *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 667 (6th Cir. 2005). But Savel made his objections a month after he filed his opposition. And he based those objections on a deposition that he took and noticed

---

[1] For the same reasons, we affirm the district court's denial of Savel's post-briefing motion to compel. As for the order compelling Savel to produce evidence from a 100-plus-person group chat he claims was privileged, that evidence plays no role in our analysis, so we do not address it. *See Westfield v. Federal Republic of Germany*, 633 F.3d 409, 413 n.2 (6th Cir. 2011).

after briefing ended. Put differently, Savel tried to "supplement" his opposition with new evidence. Mot. to Compel & Objs., R. 68, PageID 4106. But by then, the district court had denied Savel's request for a month-long extension, which Savel sought precisely so he could gather more evidence for his opposition. Given that earlier ruling, the district court did not abuse its discretion in denying as moot Savel's second, post-briefing attempt to expand the summary judgment record.

## III.    **Dismissal Order**

Crockett appeals the district court's decision to dismiss her claims with prejudice after she moved for dismissal without prejudice. We review that ruling for abuse of discretion. *United States v. One Tract of Real Prop.*, 95 F.3d 422, 425 (6th Cir. 1996). In doing so, we consider whether the district court gave Crockett (1) notice, (2) an opportunity to be heard, and (3) a chance to withdraw her dismissal motion and proceed with her claims. *Id.* at 425–26.

All three factors are met here. Before the district court ruled on her motion, Crockett submitted a short brief opposing dismissal with prejudice, so she had an opportunity to be heard. The district court disagreed with Crockett and, citing her "dilatory discovery conduct," deemed dismissal with prejudice appropriate. Order, R. 44, PageID 1155. It then gave Crockett a chance to continue with her claims rather than have them dismissed with prejudice, so long as she complied with her discovery obligations. She declined to do so. The district court acted within its discretion in dismissing her claims with prejudice.

## CONCLUSION

We affirm the district court's judgment.